STATE of Wisconsin, Plaintiff-Respondent,

v.

Louis J. THORNTON, Defendant-Appellant.

Court of Appeals

*Nos. 01–0726–CR, 01–0727–CR. Submitted on briefs May 13, 2002.—Decided November 14, 2002.*

2002 WI App 294

(Also reported in 656 N.W.2d 45.)

On behalf of the defendant-appellant, the cause was submitted on the brief of *Louis J. Thornton*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Lara M. Herman*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Vergeront, P.J., Deininger and Lundsten, JJ.

¶ 1. DEININGER, J. Louis Thornton appeals a judgment of conviction for robbery and forgery, and an order denying his motion for postconviction relief. He claims he was denied his constitutional right to postconviction/appellate counsel in this, his "matter of right" postconviction proceedings and appeal. We conclude, however, that the record establishes that he knowingly and voluntarily waived his right to postconviction counsel. We also conclude that Thornton's second claim of error, that the ineffective assistance of his trial counsel rendered his no contest pleas invalid, is also devoid of merit. Accordingly, we affirm the appealed judgment and order.

## BACKGROUND

¶ 2. In the circuit court cases underlying this consolidated appeal, the State charged Thornton with seven felonies, all carrying repeater enhancements. The parties entered into a plea agreement calling for the dismissal of all repeater allegations and all but two unenhanced counts, one each of robbery by use of force and uttering a forged writing. In return for Thornton's no contest pleas to the two offenses, the State joined Thornton's counsel in recommending a four-year prison term and five years of concurrent probation. The trial court accepted Thornton's pleas and imposed the jointly recommended sentence.

¶ 3. Thornton's trial counsel filed a notice of his intent to seek postconviction relief, and the State Public Defender appointed postconviction counsel for him. Counsel, however, after obtaining two extensions of time for filing a postconviction motion or notice of

appeal, moved this court to withdraw.[1] Counsel stated in the motion that he had informed Thornton of his conclusion that "there were no meritorious issues to raise on appeal," and told Thornton of "his options." After taking some time to consider his course of action, and after receiving a letter and two form documents from counsel, Thornton signed and returned the following to his attorney:

## REQUEST TO PROCEED PRO SE

I, Louis J. Thornton, hereby requests [sic] that my appointed appellate counsel, [name of counsel], seek to withdraw as my attorney in Dane County Cases #99 CF 399 and 99 CF 1436.

I understand that by proceeding as a pro-se (unrepresented) litigant, I will be solely responsible for complying with the rules of appellate procedure and will be solely responsible for the timely filing of briefs and motions. I understand that postconviction motions will have to comply with Rule 809.36(2), Stats. and that my briefs will have to conform to the content, form, and length requirements of Rule 809.19, Stats. I further understand that I cannot expect successor appellate counsel to be appointed, even if I later decide that proceeding pro-se was a mistake.

---

[1] At the time (January 2000), motions for withdrawal by postconviction or appellate counsel were routinely filed in this court regardless of whether a notice of appeal had been filed. Effective July 1, 2001, however, WIS. STAT. RULE 809.30(4)(a) directs that prior to the filing of a notice of appeal, withdrawal motions are to be filed in the circuit court, and after the filing of a notice of appeal, in this court. Additionally, we note that all references in this opinion to provisions of WIS. STAT. RULE ch. 809 are to the version effective on and after July 1, 2001.

In making this decision to proceed pro-se, I have decided against the alternative of advising Attorney [name] to file a no-merit report. I realize that if Attorney [name] filed a no-merit report pursuant to Rule 809.32, Stats., I would have the opportunity to respond to the no-merit report and that the court would consider both the no-merit and my response in determining whether my case presented issues of merit.

I have carefully considered the situation, and it is my expressed desire that I be allowed to proceed pro-se. I make this decision freely, voluntarily, and intelligently.

/s/ Louis J. Thornton
Louis J. Thornton

05–11–63
Date of Birth

March 10, 2000
Date

## OPTIONS

_____ I hereby give my appellate counsel [name] permission to close my cases in regards to Dane County Case Nos. 99 CF 399 and 99 CF 1436.

_____ I hereby request that my appellate counsel [name] file a no-merit brief in my cases, Dane County Case Nos. 99 CF 399 and 99 CF 1436.

L.T. √ I hereby request that my appellate counsel [name] seek permission to withdraw as my appellate counsel in Dane County Case Nos. 99 CF 399·and 99 CF 1436 in order that I may proceed pro-se.

164

I have checked the appropriate option above. I make this decision freely, voluntarily, and intelligently.

/s/ Louis J. Thornton
Louis J. Thornton

05–11–63
Date of Birth

March 10, 2000
Date

¶ 4. Counsel also stated in his withdrawal motion his belief that Thornton "freely and voluntarily desires to proceed pro-se," and he requested on Thornton's behalf that additional time be granted for Thornton to move for postconviction relief or to commence an appeal. In an order granting the motion to withdraw and a sixty-day extension of time, we concluded that "[t]he documents submitted satisfy us that [Thornton] is waiving his constitutional right to appellate counsel knowingly and voluntarily."

¶ 5. Thornton subsequently wrote to the trial court requesting the court to appoint him an attorney for postconviction proceedings. The record does not indicate what action, if any, was taken on this request, other than the forwarding of copies to the office of the State Public Defender and to the assistant district attorney who had prosecuted Thornton. Thornton next filed a pro se postconviction motion in the circuit court requesting that he be permitted to withdraw his no contest pleas. In it, he claimed, among other things, that his trial counsel had withheld certain information from him, thereby rendering his pleas unknowing and involuntary.

165

¶ 6. After filing his motion, Thornton again requested the trial court to appoint counsel for him. He forwarded with his request a copy of a letter from the office of the State Public Defender stating that it would not appoint counsel for Thornton because he "has waived his constitutional right to appellate counsel," citing this court's order to that effect.

¶ 7. The circuit court entered an order scheduling Thornton's motion to withdraw his plea for an evidentiary hearing. The order also stated that Thornton "should contact" the State Public Defender "and/or" the Legal Assistance for Inmates Program at the University of Wisconsin Law School "for legal assistance." Thornton apparently contacted the latter as there is correspondence in the record from the director of the program to the court indicating that, after speaking to a program attorney, "Mr. Thornton declined LAIP representation." Another letter from the State Public Defender reiterated to Thornton that because he had chosen "to dismiss the lawyer that this office appointed to handle your appeal, we will not appoint another lawyer for you on this matter."

¶ 8. Thornton renewed his request for court-appointed counsel several more times prior to and at the commencement of the hearing on his motion. The trial court denied Thornton's request and conducted the hearing. Thornton was the lone witness, and the following summary by the prosecutor accurately characterizes his testimony:

> In effect, your Honor . . . [a]ll of Mr. Thornton's claims, incoherent as they are, boil down to claims that [trial counsel] was ineffective. She didn't meet with him, she didn't talk with him, she didn't discuss, she didn't separate these two cases in her mind, she didn't provide

him with discovery, and that, therefore, his pleas were involuntary because he was confused by inadequate counsel.

The court denied Thornton's motion, concluding that he had not satisfied his burden to establish grounds for withdrawing his pleas. The court stated that it remembered and had reviewed the transcript of Thornton's plea hearing, where "we took a lot of time . . . to make sure that you understood everything, that you asked questions, that you had a chance to communicate."

¶ 9. Thornton appeals, pro se, the subsequently entered order denying his postconviction motion, as well as the judgment of conviction which preceded it.

## ANALYSIS

██

¶ 10. In its response brief, the State has "reassembled" Thornton's arguments on appeal into two distinct claims of error: "(1) [v]iolation of his right to counsel in his direct appeal"; and "(2) [p]lea withdrawal on grounds of ineffective assistance of trial counsel." Thornton did not file a reply brief, and he has therefore not objected to the foregoing statement of the issues raised in his appeal. We accept the State's framing of the issues as a fair characterization of the claims Thornton has presented for review. We address them in the order stated.

¶ 11. Whether Thornton was wrongly deprived of his constitutional right to counsel is a question of constitutional fact which we review de novo. *See State ex rel. Warren v. Schwarz*, 219 Wis. 2d 615, 647–48, 579 N.W.2d 698 (1998). Questions of "constitutional fact" are not actually "facts" in themselves, but are questions

which require the " 'application of constitutional principles to the facts as found.' " *See State v. Woods*, 117 Wis. 2d 701, 715, 345 N.W.2d 457 (1984) (citation omitted). The facts relating to Thornton's claim that he was wrongfully denied counsel during postconviction proceedings are not disputed, leaving only the legal question of whether his constitutional rights were violated.

■■■

¶ 12. A person convicted in Wisconsin of committing a crime has a constitutionally guaranteed right to appeal his or her conviction to this court. WIS. CONST. art. I, § 21(1); *State v. Perry*, 136 Wis. 2d 92, 98, 401 N.W.2d 748 (1987). The right to an appeal includes the right that "the appeal be a meaningful one." *Id.* at 99. An indigent defendant is constitutionally entitled to the appointment of counsel at public expense for the purpose of prosecuting his or her "*one and only appeal . . .* as of right" from a criminal conviction. *Douglas v. California*, 372 U.S. 353, 357–58 (1963); *State ex rel. Warren*, 219 Wis. 2d at 648.[2]

¶ 13. The State does not dispute that Thornton is indigent, and it concedes that the instant appeal, including the postconviction proceedings in the trial court which preceded it, constitutes Thornton's first effort to

---

[2] The right in dispute in this appeal, that of an indigent defendant to have counsel provided at public expense for purposes of a first appeal as of right from a state criminal conviction, appears to be grounded in the due process clause of the Fourteenth Amendment, rather than in the Sixth Amendment, which applies to "criminal prosecutions." *See Douglas v. California*, 372 U.S. 353, 357–58 (1963); *but see McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 436 (1988) ("If a convicted defendant elects to appeal, he retains the Sixth Amendment right to representation by competent counsel . . . .").

obtain relief from his conviction under WIS. STAT. RULE 809.30 (1999–2000).[3] Thus, there is no dispute that Thornton was constitutionally entitled to be represented by counsel at public expense, unless he lawfully waived or for some reason forfeited that right.

¶ 14. The State argues that Thornton knowingly and voluntarily waived his right to postconviction counsel. A criminal defendant may waive his or her right to counsel in criminal trial court proceedings, provided the record reflects that the waiver is knowingly, intelligently and voluntarily made, and that the defendant is competent to proceed pro se. *State v. Klessig*, 211 Wis. 2d 194, 203–04, 564 N.W.2d 716 (1997). Appellate or postconviction counsel appointed by the State Public Defender may move to withdraw from representation of a client, and in determining the motion, the court "shall consider . . . whether the defendant waives the right to counsel." WIS. STAT. RULE 809.30(4)(c).[4] Although several Wisconsin appellate opinions address the requirements for effecting a valid waiver of trial counsel, there appears to be no state precedent which squarely ad-

---

[3] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted. As we have noted, however, our references to WIS. STAT. RULE ch. 809 are to the version effective as of July 1, 2001.

[4] Thornton's postconviction/appellate counsel filed a "motion to withdraw as counsel." In this appeal we decide only whether we correctly concluded that Thornton knowingly and voluntarily waived his right to counsel. We do not address, because the issue is not before us, whether WIS. STAT. RULE 809.30(4), or other law, requires that a motion to withdraw be filed any time an attorney appointed by the State Public Defender terminates his or her postconviction/appellate representation of a defendant.

169

dresses the requirements for a proper waiver of post-conviction or appellate counsel.

¶ 15. The United States Court of Appeals for the Seventh Circuit, however, has addressed the issue in a case involving a Wisconsin state court conviction and appeal. *See Oimen v. McCaughtry*, 130 F.3d 809 (7th Cir. 1997). Oimen was convicted of felony murder and he appealed to this court. *Id.* at 810. The State Public Defender appointed postconviction/appellate counsel, who filed a postconviction motion in the circuit court on Oimen's behalf. *Id.* After the motion was denied, counsel filed a notice of appeal and an opening brief with this court, and the State responded. *Id.* At that point, Oimen moved pro se for his appellate counsel to withdraw because he "refused to raise a claim of ineffective assistance of trial counsel" that Oimen wanted counsel to pursue. *Id.* Counsel responded by requesting permission to withdraw, citing Oimen's claim that he was providing ineffective representation and the resulting conflict of interest which that claim created for counsel. *Id.* at 810–11.

¶ 16. We "advised Oimen in writing that he might not be granted new appellate counsel if [his present appellate counsel] were allowed to withdraw," and we ordered him to "advise the court whether, knowing that he may be forced to proceed *pro se,* he still wanted" his counsel removed. *Id.* at 811. Oimen responded in writing that he wanted to proceed in that fashion, and we granted his motion and his counsel's request. *Id.* We also decided not to consider the brief counsel had filed on Oimen's behalf, and both we and the State Public Defender declined to appoint Oimen successor counsel. *Id.* Oimen filed a pro se brief and we affirmed his conviction, as did the Wisconsin Supreme Court, where

170

Oimen was represented by a state public defender on the petition for review. *Id.*

¶ 17. The Seventh Circuit noted that Oimen was constitutionally entitled to counsel during proceedings in this court, and also when he was asked to decide whether to return to the circuit court for a *Machner* hearing.[5] *Id.* The court also pointed out that Oimen did not have to show that he suffered prejudice from his lack of counsel at that stage of the appeal process because it constituted a complete denial of representation. *Id.* The court determined that the dispositive inquiry was "whether the letters between Oimen and the court of appeals constitute a valid waiver of the right to counsel." *Id.* It concluded that they did:

> But what exactly does it take to effectuate a valid waiver of counsel on appeal? For reasons that are too clear to us to require explanation, appellate courts do not engage in face-to-face dialog with defendants. So a waiver on appeal must be accomplished through written communication. Here the court of appeals told Oimen that if he insisted on having [his counsel] withdraw he might not get a second attorney. It was clear that Oimen wanted substitute counsel, but he also clearly signaled his willingness to proceed *pro se* if [his present counsel] was his only other choice. Especially given that [counsel]'s only perceived deficiency was that he would not do something which Oimen had no right to insist on, we find that Oimen validly waived his right to counsel.

*Id.* at 812.

---

[5] *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979) (holding that a postconviction, evidentiary hearing at which trial counsel explains "the reasons underlying his handling of a case" is "a prerequisite to a claim of ineffective representation on appeal").

¶ 18. The United States District Court for the Eastern District of Wisconsin has distinguished *Oimen* in a case where it concluded a defendant's right to postconviction/appellate counsel was violated. *Wisconsin ex rel. Toliver v. McCaughtry*, 72 F. Supp. 2d 960, 977 (E.D. Wis. 1999). The District Court explained that United States "Supreme Court precedent does not require . . . any specific court procedure—such as a court hearing—for finding waiver," and that the Seventh Circuit's opinion in *Oimen* acknowledged the validity of written communications in establishing waiver in the appellate counsel context. *Id.* at 974. The court concluded in *Toliver*, however, that this court had "failed to use *any* means to provide Toliver with a warning or confirm that he was knowingly seeking to proceed pro se and had no misconceptions about whether substitute counsel would be appointed." *Id.* at 977.

¶ 19. The court also contrasted our actions in *Toliver* with the waiver of counsel procedure described in an unpublished decision of this court. The District Court's comments suggest that our actions in the unpublished case would pass constitutional muster:

[C]ounsel informed the court [of appeals] that his client wished to proceed pro se. In a five-page order the court noted its independent responsibility to determine that a waiver of counsel is made "knowingly, voluntarily and intelligently, as a deliberate choice to proceed *pro se* with an awareness of the difficulties such self-representation entails"; provided the appellant with information on how counsel could be valuable to him; informed him about his right to a no merit report; and, importantly, warned the appellant twice that it would not appoint successor counsel. The court allowed [the defendant] an opportunity to advise the clerk whether he still wished to discharge his attorney and indicated that if [his] response left the court "in doubt as to his

understanding of the consequences of proceeding *pro se,*" the court would not authorize counsel's withdrawal.

*Id.* at 978 (citations omitted).

¶ 20. On a distinct but related issue of how appointed counsel, after concluding there is no merit to further postconviction or appellate proceedings on behalf of a client, should document the client's decision to waive an appeal, the Wisconsin Supreme Court has declined "to make any particular method of documentation mandatory." *State ex rel. Flores v. State,* 183 Wis. 2d 587, 624, 516 N.W.2d 362 (1994).[6] The court explained that the record must reflect that the defendant was informed of the right to appeal and of the right to counsel, as well as of the "No Merit report option" under *Anders v. California,* 386 U.S. 738 (1967) and Wis. Stat. Rule 809.32. *Id.* at 603–07. However, "[i]t does not matter how or in what manner the defendant is so informed." *Id.* at 610.

---

[6] *State ex rel. Flores v. State,* 183 Wis. 2d 587, 516 N.W.2d 362 (1994), addressed a circumstance where appointed counsel, after conferring with her client, determined that the client had agreed to abandon an appeal. Counsel then simply "closed the file" without moving to withdraw or filing a no merit report. *See* Wis. Stat. Rule 809.32(1)(b)1.b. The supreme court discussed, among other things, whether the defendant had validly "waived his right to appeal," *Flores,* 183 Wis. 2d at 615, and whether counsel had rendered effective assistance prior to the waiver, *id.* at 600–01. Here, Thornton opted to proceed pro se in filing a postconviction motion and an appeal, another result that may follow a determination by postconviction/appellate counsel that further proceedings would lack merit. *See* Wis. Stat. Rule 809.32(1)(b)1.c. The issue before us is whether Thornton knowingly and voluntarily waived his right to counsel, a question that was not before the court in *Flores.*

> We conclude that a criminal defendant may be informed about appellate rights through the use of written materials. Once so informed, the information need not be repeated verbally. Again, all that is required is that the proper information be conveyed.

*Id.* at 614.

██

¶ 21. The State offers the following synthesis of the foregoing decisions. Before a court may conclude that a criminal defendant has knowingly and voluntarily waived his or her right to counsel on direct appeal, it must satisfy itself that the defendant is aware: (1) of the *Flores* rights (to an appeal, to the assistance of counsel for the appeal, and to opt for a no-merit report); (2) of the dangers and disadvantages of proceeding pro se;[7] and (3) of the possibility that if appointed counsel is permitted to withdraw, successor counsel may not be appointed to represent the defendant in the appeal. We agree with the State that ensuring a defendant has received and understands the listed information is both necessary and sufficient to support a determination that the defendant's tendered waiver of counsel is knowing and voluntary.

¶ 22. We also conclude that, given the nature of proceedings in this court, the necessary "colloquy" may be accomplished via written communications with the

---

[7] For example, a defendant might be advised "that there are established rules governing the manner in which a case is . . . [appealed and argued on appeal] and that [the defendant] would be bound by them, despite his lack of formal training in the law." *See Pickens v. State*, 96 Wis. 2d 549, 565, 292 N.W.2d 601 (1980), *overruled on other grounds by State v. Klessig*, 211 Wis. 2d 194, 564 N.W.2d 716 (1997).

defendant, initiated either by the court or by counsel seeking to withdraw. In the latter case, however, the court must satisfy itself as to the sufficiency of the content of counsel's documents and to their voluntary execution by the defendant. If counsel moves to withdraw prior to the filing of a notice of appeal, the motion must be directed to the circuit court (see footnotes 1 and 4), and a more traditional oral colloquy between defendant and the court should be employed. *See Klessig*, 211 Wis. 2d at 206.

■■■■■

¶ 23. To the foregoing requirements for a valid waiver in all cases, we add the following which may apply in some. If a waiver of appellate counsel is tendered to this court, and we determine that the correspondence among counsel, the defendant and the court (or anything in the record, if it has been filed) raises a question regarding the defendant's understanding of the necessary information, we may either deny the waiver or refer the matter to the circuit court to conduct a hearing on the matter.[8] The same would apply if we have reason to doubt the defendant's competency for self-representation. *See id.* at 212. On this latter point, we note that "persons of average ability and intelligence" should be permitted to represent themselves, and that we should only deny or delay the acceptance of an otherwise proper waiver if " 'a specific

---

[8] This court does not engage in factual inquiries, but we may refer questions to the circuit court for the purpose of making factual determinations. *See* Wis. Stat. § 808.075(6) ("appellate court may remand the record to the circuit court for additional proceedings while the appeal is pending"); Wis. Stat. § 752.39; *State v. Knight*, 168 Wis. 2d 509, 521, 484 N.W.2d 540 (1992) (in writ proceedings, court of appeals may refer issues of fact to circuit court or a referee).

problem or disability can be identified' " in the submissions before us. *Id.* (citation omitted).

¶ 24. We are satisfied that these requirements for a valid waiver of appellate counsel are met on the present record. The documents prepared by counsel and executed by Thornton, together with the statements in counsel's motion to withdraw (see ¶¶ 3–4), establish that Thornton received and acknowledged his understanding of the necessary information to render his waiver knowing and intelligent. Nothing in these materials calls into question the voluntariness of Thornton's decision to proceed pro se or his competence to represent himself.[9] Soon after we accepted his waiver

---

[9] Prior to his withdrawal, Thornton's postconviction counsel requested that we extend the time for filing a postconviction motion or notice of appeal, in part because of counsel's need to investigate Thornton's then recent claim "that he is suffering from a mental illness." We granted the request. Counsel's next submission to us was the motion to withdraw, which recited, among other things, that counsel had informed Thornton of counsel's "final conclusion . . . that there were no meritorious issues to raise on appeal," and that counsel believed "that defendant freely and voluntarily desires to proceed pro-se." We conclude from this that counsel could not substantiate Thornton's mental illness claim.

After we granted the withdrawal motion, Thornton communicated with this court on several occasions regarding his need for extensions of filing deadlines and his request for a fee waiver. In these communications Thornton neither raised any claim of mental illness nor gave any other indications that he was not competent to represent himself in the appeal.

Finally, we note that after the circuit court denied his postconviction motion and he filed his notice of appeal, Thornton moved this court for the appointment of counsel. The only grounds cited in Thornton's motion were the "inadequate law

and permitted his counsel to withdraw, Thornton had a change of heart and actively pursued the appointment of successor counsel in the circuit court. That fact, however, does not undermine the validity of his initial, knowing and voluntary decision to represent himself in postconviction and appellate proceedings.

██

¶ 25. We turn next to Thornton's claim that the trial court erred in denying his request to withdraw his pleas on the grounds that his trial counsel rendered ineffective assistance prior to his pleading no contest. To prevail on a claim of ineffective assistance of counsel, a defendant must establish that his trial counsel's performance was deficient and that this performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). In analyzing an ineffective assistance claim, this court may choose to address either the "deficient performance" component or the "prejudice" component first. *See id.* at 697. If we determine that the defendant has made an inadequate showing on either component, we need not address the other. *See id.* To establish prejudice, Thornton must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

██

¶ 26. Although the circuit court conducted an "evidentiary hearing," the only testimony Thornton presented was his own. We must first decide, therefore,

---

library" at his institution and his lack of legal training and experience. Absent from the motion was any claim of mental illness or other disability, or any indication that Thornton did not possess "average ability and intelligence." *See Klessig*, 211 Wis. 2d at 212. We denied the motion for appointment of counsel but granted Thornton additional time to file his opening brief.

if the trial court properly denied Thornton's motion without hearing from Thornton's trial counsel regarding the events which preceded Thornton's plea. (See footnote 5.) In effect, the dispositive question is: Did the trial court err in denying Thornton's postconviction motion without a (complete) evidentiary hearing? We conclude the court did not err.

¶ 27. A circuit court may deny a postconviction motion alleging ineffective assistance of counsel as a basis for plea withdrawal without conducting a *Machner* hearing if the motion fails to allege sufficient facts which, if proven, would entitle the defendant to relief. *See State v. Bentley*, 201 Wis. 2d 303, 318, 548 N.W.2d 50 (1996). Thornton's motion alleges, in conclusory fashion, that his trial counsel did not inform him of certain facts, and had she done so, he would not have pled no contest.[10] Lacking, however, is any " 'explanation of *why*

---

[10] In addition to some vague assertions regarding trial counsel's failure to spend sufficient time discussing the plea agreement with him, and his consequent "loss [of] trust" in counsel and "panic," Thornton claims to not have been aware until after his plea that the victim of the forgery had written the prosecutor to acknowledge that she may have signed some of the checks thought to have been forged by Thornton. An attachment to his motion, however, which Thornton also subsequently proffered as evidence at the postconviction hearing, appears to be an excerpt from a letter to Thornton from his trial counsel in which counsel recites that she had discussed with Thornton (1) the State's proof problems on some of the forgery counts, and (2) her opinion that "a trial on the forgery and vehicle charges had a reasonable chance of resulting in an acquittal." The excerpt also describes Thornton's active involvement in fashioning a plea bargain proposal which would greatly lessen his potential exposure to imprisonment, a proposal which was ultimately accepted by the State and the trial court.

the defendant alleges he would have gone to trial,' " *id.* at 314 (citation omitted), or objective facts which would "allow the court to meaningfully assess his claim of prejudice," *id.* at 318.

¶ 28. Moreover, as the State points out, the plea bargain which Thornton and his counsel struck with the State reduced his potential maximum exposure from 102 years of imprisonment to twenty, and obtained for him a joint sentencing recommendation (which the court accepted) of only four years imprisonment with five years concurrent probation. Thornton's chief complaint against his trial counsel is that he lacked full knowledge of a possible defense against one or more of the forgery counts. He offers no explanation in his motion, however, as to why this knowledge (or longer discussions with his counsel) would have prompted him to reject an extremely favorable plea agreement which resolved all pending charges, and which he had apparently instructed his counsel to propose. (See footnote 10.)

¶ 29. Finally, as we have noted, Thornton testified at the postconviction hearing. His testimony essentially replicated the allegations in his motion. Just prior to the court's ruling, the prosecutor asked Thornton the following:

Q Your basic claim, if I'm understanding, Mr. Thornton, is that [trial counsel] did not pass on to you information about your case and that had you had that information at the time to think about it, to digest it, that you would not have entered your pleas. Have I got that essentially right?

Rather than agreeing with the prosecutor's potentially helpful summary, however, Thornton replied: "Essen-

tially, no. My basic thing is that my attorney knew I wasn't guilty. You knew I wasn't guilty. Why would you convict an innocent man?"

¶ 30. Thornton's response arguably negates any claim of prejudice stemming from his counsel's alleged omissions because it disavows a causal connection between the omissions and Thornton's plea. His protestation of innocence, although a factor to be considered in certain plea withdrawal contexts,[11] does not cure Thornton's failure to allege objective facts from which a court could conclude that he had suffered prejudice on account of his trial counsel's performance. In short, we agree with the trial court's conclusion that Thornton did not meet his burden to put forward sufficient factual allegations, which if true, would support withdrawal of his no contest pleas.

## CONCLUSION

¶ 31. For the reasons discussed above, we affirm the appealed judgment and order.

*By the Court.*—Judgment and order affirmed.

---

[11] When a court considers whether to permit a defendant to withdraw a guilty or no contest plea prior to sentencing, "[a]n assertion of innocence is important, but not dispositive." *State v. Leitner*, 2001 WI App 172, ¶ 25, 247 Wis. 2d 195, 633 N.W.2d 207, *aff'd*, 2002 WI 77, 253 Wis. 2d 449, 646 N.W.2d 341.